MIKE M. GRANCICH AND HELEN GRANCICH, ET AL, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Grancich v. Commissioner
Docket Nos. 5459-73, 5461-73, 4169-75, 4170-75, 4172-75.
United States Tax Court
T.C. Memo 1978-92; 1978 Tax Ct. Memo LEXIS 421; 37 T.C.M. (CCH) 424; T.C.M. (RIA) 780092; March 7, 1978, Filed; As Amended June 20, 1978 Anthony J. Bradisse, for the petitioners. John O. Kent, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies and additions to tax in the Federal income tax of petitioners as follows: Docket
Taxable
Additions to Tax No.
Year
Deficiency
Sec. 6653(b), I.R.C. 1954
5459-73
1969
$ 3,240.15
$ 1,620.08
5461-73
1969
11,327.14
5,663.57
4169-75
1972
2,361.79
1,180.90
4170-75
1970
12,610.53
6,305.26
1971
11,044.58
5,522.29
4172-75
1970
3,911.53
1,955.77
1971
4,389.33
2,194.67
1972
1,125.67
562.84
*422 Upon joint motion of the parties, these cases were consolidated for purposes of trial, briefs and opinion. Due to concessions the issues remaining for our decision are: (1) Whether petitioners received income from extortion in their respective taxable years 1969, 1970, 1971 and 1972; and (2) Whether petitioners underpaid their income tax for any of the taxable years 1969 through 1972, inclusive, and if so whether the underpayment was due to fraud on the part of Petitioner Archie A. Galea or Petitioner Mike M. Grancich. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and supplemental stipulation of facts with attached exhibits are incorporated herein by reference. Petitioners Archie A. Galea and his wife, Marie Galea, filed their joint Federal income tax returns for the taxable years 1969 and 1970 with the District Director of Internal Revenue at Los Angeles, California. Marie Galea died on August 27, 1971. Mr. Galea filed a joint Federal income tax return as surviving spouse for the taxable year 1971 and his individual Federal income tax return for the taxable year 1972 with the District Director of Internal Revenue at Los Angeles, *423 California. Petitioners Mike M. Grancich and his wife, Helen Grancich, filed their joint Federal income tax returns for the taxable years 1969, 1970, 1971 and 1972 with the District Director of Internal Revenue at Los Angeles, California. During all the time pertinent to the taxable years in issue, Mr. Grancich held the position of secretary-treasurer and principal executive officer of Local Union 626, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (hereinafter referred to as Local 626). Likewise, Mr. Galea was a business agent for Local 626 during the taxable years in issue. In his capacity as a business agent, Mr. Galea represented union members who were employed in the business of loading and unloading meat products. In addition, Mr. Galea represented truck drivers who transported meat products in the Los Angeles area. During the taxable years in issue the meat loading business in Vernon, California, was divided between non-union and union workers. The meat loading business involved the loading and unloading of trucks containing meat products which were delivered to and from various meat packers. Upon delivery the meat packers *424 would store and process the meat carcasses and later deliver the products in their own trucks to retailers in the greater Los Angeles area. Some meat packers used their non-union employees to load the trucks while others used union loaders. The union workers belonged to the Teamsters Union. Mr. Grancich as secretary-treasurer and principal executive officer was responsible for the operations of the Teamsters Union local organization in Vernon, California. Mr. Galea as business agent worked under the supervision of Mr. Grancich. Mr. Galea's responsibilities included the investigation of union member grievances, collection of union dues, and enforcement of union contracts with the meat packers in his jurisdiction (Vernon, California). These responsibilities required Mr. Galea to frequently visit the offices of the meat packers. In addition he visited picket lines established by various unions which were striking at meat packing plants. Although the Teamsters Union (Local 626) never conducted a strike in the Vernon area, it would honor other union strikes. It was Mr. Galea's responsibility to insure that the members of Local 626 honored the picket line by refusing to engage in *425 any activities with the particular meat packer. Mr. Galea reported to Mr. Grancich and informed him of the day-to-day operations of Local 626 vis-a-vis the meat companies. Mr. Galea used his position with Local 626 to demand payment of money from both union and non-union workers. The payments were made under the threat of losing existing accounts with the meat packers, as well as insuring the acquisition of new accounts with other meat packers in the area. The meat packers employed individuals to load and unload their trucks based on the recommendations of Mr. Galea. The recommendations were made under threat of union strike if not followed. Likewise, if the meat loaders did not pay "protection money" Mr. Galea instructed the meat packers not to employ them. Mr. Don Matthews, with few exceptions, collected the "protection money." He would then turn the money over to Mr. Galea. The periodic payments of money received by Mr. Galea were divided equally among Mr. Galea, Mr. Grancich and Mr. Joe Loya, another business agent of Local 626. In 1968 Mr. Robert Dougherty was operating a meat loading business known as Service Swampers. He had a number of accounts with meat packers *426 in the Vernon area. He was not a member of Local 626. Mr. Matthews contacted Mr. Dougherty and informed him that he must pay $50 per week in order to continue the operation of his business. Mr. Galea told Mr. Dougherty that as long as he paid $50 per week to Mr. Matthews he would not have to worry about losing his current accounts with the local meat packers. Mr. Dougherty paid $50 per week to Mr. Matthews from September 1969 through February 1971. The payments were made by both cash and personal checks made payable to Mr. Matthews. In March 1969 Mr. Galea and Mr. Matthews met with Mr. Dougherty and told him to join Pronto Loading and Unloading Company, Inc. (Pronto). Pronto was an unloading service comprised of individuals who in the past had operated as independent loaders in Vernon. Mr. Dougherty was reluctant to join and offered Mr. Galea $2,000 with the hope of averting his association with Pronto. Mr. Galea refused to accept the $2,000 and told Mr. Dougherty that Mr. Grancich wanted him to join Pronto. As a result of this conversation Mr. Dougherty joined Pronto and ceased operating Service Swampers. Pronto conducted business activities in the same manner as its *427 individual members had prior to its formation. It operated under a union contract and serviced the local meat packers. Pronto made "protection payments" from 1969 through 1972. The amount of the payments varied from $350 per week during 1969 to $600 per week during 1970 and subsequent years. While Mr. Dougherty was associated with Pronto, Mr. Galea told him that the weekly payments made by Pronto were divided equally among Mr. Galea, Mr. Grancich and Mr. Loya. In addition to the weekly payments made by Pronto Mr. Galea received $1,000 from Pronto for the purported purpose of taking a trip to Hawaii. Mr. Galea and Mr. Matthews divided some money without the knowledge of Mr. Grancich. Mrs. Helen Taylor was employed as a bookkeeper by Pronto from February 1969 to February 1971. She was responsible for recording all expenditures and bookkeeping entries. Mr. Matthews instructed her to draw weekly company checks in the amount of $500 and payable to Mr. Matthews. During the early part of 1970 Mr. Matthews, without explanation, instructed Mrs. Taylor to stop writing the weekly checks. In addition to her responsibilities as bookkeeper for Pronto, Mrs. Taylor was responsible *428 for making cash deposits. She made cash deposits approximately three times each week. At the end of each week an amount of cash was placed in a blank envelope, put in Pronto's safe and never deposited with the bank. The amount of cash placed in the blank envelope varied from $450 to $600 each week during the time of Mrs. Taylor's employment with Pronto. [2]
On several occasions Mr. Matthews instructed Mrs. Taylor to call Mr. Eddie Martinez and tell him to deliver $50 to Pronto. Mr. Martinez delivered the $50 payments to Mrs. Taylor who in turn made an appropriate entry for the receipt. Mr. Martinez was in the unloading business from 1968 through 1972. His primary customer was King Meat Company. In August 1968 Mr. Matthews told Mr. Martinez that he must pay $50 per week to retain King Meat Company as a customer. Mr. Martinez responded to this threat by making weekly payments of $50 from August 1968 to March 1972. Mr. Joseph Goldstein was manager and vice president *429 of Quality Meat Co. in 1969.During 1969 Quality Meat was involved in a labor dispute with the Retail Clerk's Union. The retail clerks picketed Quality Meat and the Gold-Pac Meat Co. Mr. Irving Gronsky was president of Gold-Pac at the time of the picketing. Mr. Gronsky and Mr. Goldstein asked Mr. Galea to contact Mr. Grancich with the hope of terminating the strike. Mr. Galea contacted Mr. Grancich and arranged for him to meet with Mr. Gronsky and Mr. Goldstein. Mr. Goldstein asked Mr. Grancich to use his position and influence to end the strikes at Quality Meat and Gold-Pac. Mr. Grancich told them not to worry about the strike. The meeting concluded and within four or five hours the pickets were removed and the strike terminated.No demand for money was made during the meeting. However, the following day Mr. Galea visited Mr. Goldstein and told him that in order to avert another strike it would be necessary to pay $1,500. Mr. Galea also instructed Mr. Goldstein to contact Mr. Gronsky and tell him to pay $1,500. Mr. Goldstein called Mr. Gronsky and informed him of Mr. Galea's demands. Mr. Goldstein then issued a check payable to cash in the amount of $1,500. He cashed the *430 check at a local bank and returned to his office and paid Mr. Galea approximately $800.[3] The following day Mr. Galea visited Mr. Gronsky and collected $1,500 from him. In 1968 Mr. Fred Blea and Mr. Ricardo Rodarte were engaged, as independent operators, in the business of loading and unloading meat trucks. During 1968 Mr. Matthews and Mr. Enrico Campanale [4] visited Mr. Blea and told him that he and Mr. Rodarte must pay $50 per week or they would lose their business. Mr. Blea was in the process of entering the hospital and anticipated being away from work for approximately one month. After Mr. Blea returned to work he and Mr. Rodarte began making payments in the amount of $50 per week to either Mr. Matthews or Mr. Campanale. The payments were made by check or cash and were made for approximately nine months. During the nine-month period Mr. Galea visited Mr. Blea to collect the $50 payment that was currently due as well as the payments that had been due during the time Mr. Blea was in the hospital. Mr. Blea paid the amount currently due but refused to pay the additional amount demanded ( $200). *431 Mr. Blea then contacted Mr. Grancich and informed him of Mr. Galea's demands. An argument ensued and Mr. Grancich told Mr. Blea that he was out of business. Mr. Blea refused to make any further payments. His business deteriorated as a result of losing loading and unloading jobs with the meat packers to a point in September 1969 that he was forced to cease doing business.Prior to termination Mr. Blea had been in the meat loading business for 22 years. The above-described events culminated in a Federal grand jury investigation of Petitioners Galea and Grancich. Mr. Dougherty testified before this grand jury. Before he testified he met with Mr. Grancich who instructed him not to implicate any official of Local 626. Mr. Grancich threatened Mr. Dougherty with reprisal if he implicated any union official. On June 29, 1972, a Federal grand jury in Los Angeles, California, returned a nine-count indictment naming Mr. Grancich, Mr. Galea and others as defendants. On February 13, 1973, an additional indictment was returned which charged Mr. Galea and Frank Martinez with one *432 count of obstruction of justice through injury to the property of Robert Dougherty because of his testimony before the grand jury, in violation of 18 U.S.C. section 1503. The judgments of conviction of Count two of the indictment returned on June 29, 1972, were reversed on appeal. [5] All other judgments of conviction were affirmed. The nine-count indictment returned on June 29, 1972 (except for Count two, the conviction of which was reversed on appeal) alleged the following: COUNT ONE 1. At times hereinafter alleged the defendants DONALD MATTHEWS and ENRICO COMPANALE were owners of a one-fifth interest in Vernon Loading and Unloading Company, Inc., a California corporation, and a one-sixth interest in Pronto Loading and Unloading Company, Inc., a California corporation. 2. At the present time the defendants DONALD MATTHEWS and ENRICO CAMPANALE are each owners of an effective one-fourth stock interest in Pronto Loading and Unloading Company, Inc. 3. At all times hereinafter alleged, the defendant MIKE M. GRANCICH was *433 Secretary-Treasurer and the principal executive officer of Local Union 626, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereafter Local 626), and defendants ARCHIE GALEA and FRANK MARTINEZ were business agents of said Local 626, which local union represented and sought to represent employees employed in an industry affecting commerce, to wit: drivers of trucks carrying meat and provisions to and in the Los Angeles area. 4. At the present, the defendants MIKE M. GRANCICH, ARCHIE GALEA, and FRANK MARTINEZ still hold the offices attributed to them in numbered paragraph 3, above. 5. At all times hereinafter alleged Vernon Loading and Unloading Company, Inc.; Pronto Loading and Unloading, Inc.; and Local 626 were each an "enterprise" within the definition contained in Title 18, United States Code, Section 1961(4) and were engaged in interestate commerce and in activities which affected interstate commerce.
6. At all times hereinafter alleged, Robert Dougherty, ENRICO CAMPANALE, DONALD MATTHEWS, Vernon Loading and Unloading Company, Inc. and Pronto Loading and Unloading Company, Inc. were employers of employees *434 in an industry affecting commerce, which employees Local 626 represented, sought to represent and would admit to membership. 7. From on or about July 1, 1968, to and including the date of this indictment, in the Central District of California, MIKE M. GRANCICH, ARCHIE GALEA, DONALD MATTHEWS, ENRICO CAMPANALE and FRANK MARTINEZ, defendants herein, did conspire, combine, confederate and agree together and with each other, and with persons unknown to the grand jury, to conduct and, directly and indirectly, participate in the conduct of the affairs of Vernon Loading and Unloading Compan8, Inc., Pronto Loading and Unloading Company, Inc., and Local 626 through a pattern of racketeering activity in violation of 18 U.S.C. sec. 1962(c). It was part of the said conspiracy that the defendants would, through harassments and threats of economic loss, intimidate various meat packers and other related businesses for purposes of extorting, receiving and accepting money and other things of value. It was a further part of the conspiracy that the defendants would, through threats of economic loss, force meat packers to contract for the services of Vernon Loading and *435 Unloading Company, Inc. (hereinafter "Vernon") and Pronto Loading and Unloading Company, Inc. (hereinafter "Pronto"). It was a further part of the conspiracy that the defendants would extort money from some of the competitors of "Vernon" and "Pronto" as a condition to those competitors continuing to operate their business and would force other competitors out of business. That in furtherance of the conspiracy and to effectuate the purposes thereof the defendants committed the following and other criminal violations within the jurisdiction of this court: a. From on or about July 1, 1968, to the date of this indictment defendants DONALD MATTHEWS and ENRICO CAMPANALE, as agents for "Vernon" and "Pronto", willfully and knowingly did pay to defendants MIME M. GRANCICH and ARCHIE GALEA and to Joe Loya, deceased, who unlawfully, willfully and knowingly did receive and accept, the sum of six hundred dollars ($600.00) per week, more or less, in violation of 29 U.S.C. sec. 186. b. From on or about October 1, 1968, to on or about February 27, 1969, defendants DONALD MATTHEWS, ENRICO CAMPANALE, ARCHIE GALEA and MIKE M. GRANCICH, willfully and knowingly did attempt *436 to obstruct, delay and affect commerce and the movement of an article and commodity, that is, meat, in commerce by extortion, in that the said defendants did obtain from Alfred Blea, as an agent and representative of Blea's Unloading Service, with his consent, the property of said company, to wit, the sum of fifty dollars ($50.00) per week, more or less, the payment of which was induced by the wrongful use by the said defendants of fear, namely the said defendants did, directly and indirectly, threaten Blea's Unloading Service with loss of its unloading accounts with various meat packers through economic pressure brought on said packers by Local 626 unless said sums of money were paid, in violation of 18 U.S.C. sec. 1951. C. From on or about the eighteenth day of September 1968, to the date of this indictment, defendants DONALD MATTHEWS and ENRICO CAMPANALE willfully and knowingly did attempt to obstruct, delay and affect commerce and the movement of an article and commodity, that is, meat, in commerce by extortion, in that the said defendants did obtain from Edward Martinez, as agent and representative of Martinez Unloading Service with his consent, the property *437 of said Edward Martinez, to wit, the sum of fifty dollars ($50.00) per week, more or less, the payment of which was induced by the wrongful use by the said defendants of fear, namely, the said defendants did, directly and indirectly, threaten Edward Martinez and Martinez Unloading Service with loss of unloading accounts with various meat packers through economic pressure brought on said packers by Local 626 unless said sums of money were paid, in violation of 18 U.S.C. sec. 1951. d. On or about the fifteenth day of October 1968, defendant ARCHIE GALEA unlawfully, willfully and knowingly did request and agree to receive, and did receive and accept, through defendant DONALD MATTHEWS, the sum of five hundred dollars ($500.00) from Robert Dougherty, an employer of employees in an industry affecting commerce, in violation of 29 U.S.C. sec. 186. e. On or about the first day of January 1971, defendant ARCHIE GALEA unlawfully, willfully and knowingly did receive and accept five hundred dollars ($500.00) from DONALD MATTHEWS, as agent and representative of "Pronto", an employer of employees in an industry affecting commerce, in violation of *438 29 U.S.C. sec. 186. f. On or about the nineteenth day of May 1972, the defendant MIKE M. GRANCICH, by misrepresentation and intimidation willfully endeavored to delay and prevent the communication of information relative to violations of the above criminal offenses by Robert Dougherty to federal criminal investigators, in violation of 18 U.S.C. sec. 1503. g. On or about the twenty-sixth day of May 1972, the defendant FRANK MARTINEZ did willfully and knowingly corruptly endeavor to influence Robert Dougherty, known to said defendant to have been a witness before a federal grand jury convened and sitting in the Central District of California, in that defendant FRANK MARTINEZ threatened to impose reprisals upon the said Robert Dougherty should the said Robert Dougherty testify against the defendant MIKE M. GRANCICH at any forth-coming trial, in violation of 18 U.S.C. sec. 1510. All in violation of 18 U.S.C. sec. 1962(d). * * *
COUNT THREE On or about the fourth day of May, 1969, in the Central District of California, MIKE M. GRANCICH and ARCHIE GALEA, being representative of employees *439 employed in an industry affecting commerce, that is, in the capacities set out in numbered paragraph 3 of Count One of this Indictment, which is incorporated herein by reference and the facts of which are repleaded herein, unlawfully, willfully and knowingly did request and agree to receive, and defendant ARCHIE GALEA did receive and accept, the approximate sum of one thousand five hundred dollars ($1,500.00) from Irving Gronsky, as agent and representative of Gold Pack Meat Company, an employer of said employees, in violation of 29 U.S.C. sec. 186. COUNT FOUR On or about the fourth day of May, 1969, in the Central District of California, defendants MIKE M. GRANCICH and ARCHIE GALEA, being representatives of employees employed in an industry affecting commerce, that is, in the capacities set out in numbered paragraph 3 of Count One of this Indictment, which is incorporated herein by reference and the facts of which are repleaded herein, unlawfully, willfully and knowingly did request and agree to receive, and defendant ARCHIE GALEA did receive and accept, the approximate sum of seven hundred dollars ($700.00) from Joseph Goldstein, as agent and representative *440 of Quality Meat Packing Company, an employer of said employees, in violation of 29 U.S.C. sec. 186.
COUNT FIVE 1. That at all times hereinafter mentioned Blea's Unloading Service was engaged in the business of loading and unloading meat produce, most of which meat is produced in various states other than the State of California including Texas, Arizona and Nevada, and said meats moved in interstate commerce from said producers outside the State of California. 2. During the period beginning on or about the 12th day of October 1968 and ending on or about the 27th day of February 1969, in the Central District of California, defendants DONALD MATTHEWS, ENRICO CAMPANALE and ARCHIE GALEA aided and abetted by defendant MIKE M. GRANCICH, did knowingly and willfully obstruct, delay and affect commerce as that term is defined in Section 1951 of Title 18, United States Code, and the movement of meat and meat products in such commerce, and did attempt to do so by extortion, that is to say, the defendants obtained United States currency from Alfred Blea and Richard Rodarte, as owners, agents, and representatives of Blea's Unloading Service, with their consent induced *441 by wrongful use of force and fear, in that the defendants did threaten Blea's Unloading Service with the loss of meat packing accounts unless and until Blea's Unloading Service paid the defendants certain sums of money. Contrary to and in violation of Title 18, United States Code, Section 1951. COUNT SIX 1. That at all times hereinafter mentioned Martinez Unloading Service was engaged in the business of loading and unloading meat produce most of which meat is produced in various states other than the State of California including Texas, Arizona and Nevada, and said meats moved in interstate commerce from said producers outside the State of California. 2. During the period beginning in or about the month of February 1970, and ending on or about the 25th day of March 1972, defendants DONALD MATTHEWS and ENRICO CAMPANALE, in the Central District of California, did knowingly and willfully obstruct, delay and affect commerce as that term is defined in Section 1951 of Title 18, United States Code, and the movement of meat and meat products in such commerce, and did attempt to do so by extortion, that is to say, the defendants obtained directly and indirectly *442 United States currency from Eddie Martinez as owner, agent and other representative, and other employees of Martinez Unloading Service, with their consent induced by the wrongful use of force and fear, in that the defendants did threaten Martinez Unloading Service with the loss of meat packing accounts unless and until Martinez Unloading Service paid the defendants certain sums of money. Contrary to and in violation of Title 18, United States Code, Section 1951. COUNT SEVEN 1. That at all times hereinafter mentioned, Robert R. Ruchti, II, and a California corporation named Ruchti Transport Company, Inc., doing business as Ruchti Beef Packers, were engaged in the business of packaging meat from wholesalers and transporting and selling that meat to retailers, most of which meat was produced in various states other than the State of California, including Texas, Arizona and Nevada, and said meats moved in interstate commerce from said producers outside the State of California. 2. On or about the 5th day of May, 1971, at Paramount, in the Central District of California, defendant ARCHIE GALEA and others whose names are not known to the Grand Jury, did knowingly *443 and willfully obstruct, delay and affect commerce as that term is defined in Section 1951 of Title 18, United States Code, and the movement of meat and meat products in such commerce, and did attempt to do so by extortion, that is to say, defendant attempted to obtain United States currency in the amount of thirty thousand dollars ($30,000.00) from Robert R. Ruchti, II, as an owner, agent, and representative of Ruchti Transport Company, Inc. by the wrongful use of force and fear, in that the defendant did commit physical violence to a refrigerated locker located at Paramount Boulevard and Jackson Street, Paramount, California, knowing that at that time, employees of Ruchti Transport Company, Inc. were inside, which locker was then and there being utilized by Ruchti Transport Company, Inc. Contrary to and in violation of Title 18, United States Code, Section 1951. COUNT EIGHT 1. Paragraph 1 of Count Seven of this Indictment is hereby realleged and incorporated as if set forth in full. 2. On or about April 28, 1971, at South Gate, in the Central District of California defendants ARCHIE GALEA, DAVID SANTANA, ANTHONY JAYICH, PETER MACHT and CHARLES RICO, *444 did willfully carry on picketing at and about the premises of a refrigeration unit located at or adjacent to the Black Angus Beef Company on California Avenue, said unit being then and there utilized by the Ruchti Transport Company, Inc., doing business as Ruchti Beef Packers, an employer engaged in an industry affecting commerce within the meaning of Section 402(e), Title 29, United States Code, in furtherance of a plan and purpose for the personal profit and enrichment of the said ARCHIE GALEA and DAVID SANTANA, to take and obtain money from Robert R. Ruchti, II, and said Ruchti Transport Company, Inc. against his will and with his consent. All contrary to and in violation of Title 29, United States Code, Section 522. COUNT NINE 1. Paragraph 1 of Count Seven of this Indictment is hereby realleged and incorporated as if set forth in full. 2. On or about April 29, 1971, at South Gate, in the Central District of California, defendants ARCHIE GALEA, DAVID SANTANA, ANTHONY JAYICH, PETER MACHT, CHARLES RICO and EDWARD CHACON did willfully carry on picketing at and about the premises of a refrigeration unit located at or adjacent to the Black Angus Beef *445 Company on California Avenue, said unit then and there being utilized by the Ruchti Transport Company, Inc., doing business as Ruchti Beef Packers, an employer engaged in an industry affecting commerce within the meaning of Section 402(e), Title 29, United States Code, in furtherance of a plan and purpose for the personal profit and enrichment of the said ARCHIE GALEA and DAVID SANTANA, to take and obtain money from Robert R. Ruchti, II, and said Ruchti Transport Company, Inc. against his will and with his consent. All contrary to and in violation of Title 29, United States Code, Section 522.
Mr. Grancich was convicted on Counts one, two, three and four, but the conviction on Count two was reversed on appeal. Mr. Galea was convicted on Counts one, two, three, four, five, seven and the indictment returned on February 13, 1973. His conviction on Count two was reversed on appeal. Mr. Galea and his wife, Marie Galea, now deceased, reported income from the following sources on their joint Federal income tax returns for the taxable years 1969 and 1970 and Archie A. Galea reported income from the following sources on the joint return he filed for the taxable *446 year 1971: Amount Reported Source
1969
1970
1971
Los Angeles Meat and
Provision Drivers
Union Local 626
$15,900.00
$16,680.00
$18,309.00
Interest income
281.77
407.36
405.62
TOTAL
$16,181.77
$17,087.36
$18,714.62
Mr. Galea reported income from the following sources on his Federal income tax return for the taxable year 1972: Amount Reported
1972
Los Angeles Meat and Provision
Drivers Union Local 626
$15,994.00
Interest income
140.50
Archie's House of Pets
2,766.50
TOTAL
$18,901.00
When the preparer of Mr. Galea's income tax returns for the taxable years 1969 through 1972 inquired as to the receipt of income other than that reported, Mr. Galea failed to inform him of the extortion payments he received in each of the taxable years. Mr. Grancich and his wife, Helen Grancich, reported income from the following sources on their joint Federal income tax return for the taxable years 1969, 1970, 1971 and 1972: Amount Reported Source
1969
1970
1971
1972
Los Angeles Meat and
Provision Drivers
Local 626
$21,200.00
$22,385.00
$24,600.00
$24,150.00
Joint Council of
Teamsters
0
1,500.00
4,500.00
4,647.00
Juliette Candy Co.
3,265.26
2,701.93
1,606.24
0
International Brother-
hood of Teamsters
0
0
798.47
0
Income from use of
company car
200.00
200.00
200.00
200.00
Barron's Emporium
Drugs
0
0
0
4,124.00
Interest income
16.69
0
2,000.00
0
TOTAL
$24,681.95
$26,786.93
$33,704.71
$33,121.00
*447 When the preparer of the Grancich income tax returns for the taxable years 1969 through 1972 inquired as to the receipt of income other than that reported, Mr. Grancich failed to inform him of the extortion payments he received in each of the taxable years. The Commissioner, in his statutory notices of deficiency, determined that petitioners failed to report income from extortion received during their taxable years as follows: Petitioners
1969
1970
1971
1972
Archie Galea and
Marie Galea, dec'd.
$29,250.00
$34,200.00
$31,200.00
$8,900.00
Mike Grancich and
Helen Grancich
8,650.01
10,400.00
10,400.00
2,966.67
On brief the Commissioner acknowledged that he had taken inconsistent positions in his statutory notices of deficiency. In the statutory notices he allocated 100 percent of the extortion payments received from Pronto and others to Petitioners Galea and one-third thereof to Petitioners Grancich. Respondent concedes on brief that if the extra judicial admission of Galea is believed wherein he stated that he divided the extortion payments one-third each to Grancich, Loya and himself, then only one-third of the total payments received *448 from Robert Dougherty, Eddie Martinez, Richardo Rodarte and Fred Blea and the weekly payments from Pronto should be allocated to Petitioners Galea. In his statutory notices the Commissioner determined the fraud penalty against all the taxpayers who filed the returns. On brief the Commissioner refers to the intent to evade tax by Mike M. Grancich and Archie A. Galea only. We conclude, therefore, that respondent concedes no fraudulent intent by Petitioner Marie Galea (now deceased) and Petitioner Helen Grancich. ULTIMATE FINDINGS OF FACT Petitioner Archie A. Galea received extortion payments in the following amounts for the years indicated: 1969
$28,250
1970
34,200
1971
31,200
1972
8,900 Of the amount he received in 1969 he retained $2,300 and divided the remaining $25,950 equally among Petitioner Mike M. Grancich, Joe Loya and himself. Petitioner Archie A. Galea divided the amounts he received in the taxable years 1970, 1971 and 1972 equally among Petitioner Mike M. Grancich, Joe Loya and himself. Petitioner Archie A. Galea received and retained for his own benefit extortion payments, constituting taxable income, in the following amounts which he *449 failed to report on Federal income tax returns for such years: 1969
$10,950.00
1970
11,400.00
1971
10,400.00
1972
2,966.67 By reason of failing to report as income the extortion payments he received and retained for his own benefit, Petitioner Archie A. Galea underpaid his income tax for each of the taxable years 1969, 1970, 1971 and 1972 and such underpayment was due to fraud on the part of Archie A. Galea. Petitioner Mike M. Grancich received extortion payments, constituting taxable income, through Petitioner Archie A. Galea in the following amounts for the years indicated which he failed to report on Federal income tax returns for such years: 1969
$ 8,650.01
1970
10,400.00
1971
10,400.00
1972
2,966.67 By reason of failing to report as income the extortion payments he received, Petitioner Mike M. Grancich underpaid his income tax for each of the taxable years 1969, 1970, 1971 and 1972 and such underpayment was due to fraud on the part of Mike M. Grancich. OPINION The first issue for decision is whether petitioners received income from extortion activities which they failed to report on their income tax returns for the taxable *450 years 1969, 1970, 1971 and 1972. On brief respondent conceded that he had taken inconsistent positions in his statutory notices as to the amounts of extortion payments received by Mr. Grancich and Mr. Galea. He determined that Mr. Galea received all of the payments and charged him accordingly. He charged Mr. Grancich with only one-third of the payments received from Robert Dougherty, Eddie Martinez, Ricardo Rodarte, and Fred Blea and the weekly payments from Pronto based upon Mr. Galea's admission to Mr. Dougherty that he divided such receipts one-third each to Grancich, Loya and himself. We believe such testimony of Mr. Dougherty and in our ultimate findings of fact we have found that Mr. Galea divided such receipts in that manner. For the taxable year 1969, we reconciled the amount to be charged to Mr. Galea as follows: Amount determined in statutory notice
$29,250
Less concession by respondent
1,000
$28,250
Less receipts from Gronsky & Goldstein
2,300
$25,950
Divided by 3 (agrees with amount charged
to Grancich)
8,650 *
Add receipts from Gronsky & Goldstein
on which there was no evidence as
to three-way split
2,300
Amount we charged to Galea
$10,950
*451 For the taxable year 1970 there is a discrepancy in computations. When the $34,200 is divided by 3 it yields $11,400 and Mr. Grancich was charged with $10,400. As respondent has not asked for an increased deficiency against Mr. Grancich over what he determined in his statutory notice of deficiency, we will not charge Mr. Grancich with more than $10,400. Mr. Galea is charged with one-third of $34,200, however, or $11,400. Petitioners argue that the burden of proving whether petitioners received the extortion income is on respondent, relying on Herbert v. Commissioner,377 F.2d 65 (9th Cir. 1966). Petitioners have misapplied the rationale of that case. It involved clear and uncontradicted testimony offered by the taxpayer which overcame the presumptive correctness of the Commissioner's statutory notice of deficiency. The point of beginning is the statutory notice of deficiency in which the Commissioner determined that petitioners received income from extortion which they failed to report on their income tax returns. That determination is presumptively correct. To prevail, petitioners must go forward with competent *452 evidence to rebut that presumption. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.[6] If the evidence offered by the petitioners is sufficient to destroy the presumptive correctness accorded the statutory notice of deficiency, the burden of going forward is shifted to respondent. The testimony offered by the taxpayer in Herbert,supra, was credible and uncontradicted. The testimony of petitioners in the instant case consisted of general denials contradicted not only by credible testimony of numerous witnesses but also by convictions based on identical operative facts. Petitioners also interpret Herbert,supra, too broadly. [7] See Caratan v. Commissioner,442 F.2d 606 (9th Cir. 1971), and Rockwell v. Commissioner,512 F.2d 882, n.1 (9th Cir. 1975). Petitioners' evidence was insufficient to overcome the presumption of correctness of the Commissioner's statutory notices of deficiency wherein *453 he determined that petitioners received extortion income which they failed to report on their income tax returns. Petitioners made no contention that the income was included in items of income they reported. They relied solely on the proposition that they never received the money. They were not only convicted of receiving the money, numerous witnesses testified that they received the money. Although the testimony of some witnesses was disputed and petitioners attempted to show bias and lack of credibility of some of respondent's witnesses, we are convinced from all of the evidence adduced at trial that petitioners received the extortion money. We carefully weighed testimony against conflicting testimony and examined all of the testimony for inferences that could reasonably be drawn and conclude, despite the protests of petitioners, that they received the money. Petitioners offered no evidence to show that the amounts of unreported income were not correct. Accordingly, we have sustained respondent as to amounts as modified in his brief as we described above. The omissions from income resulted in underpayments of income tax. The remaining question is whether any part of the *454 underpayment was due to fraud. Respondent has the burden of proof with respect to the issue of fraud and can carry his burden only upon a showing of fraud by clear and convincing evidence. Sec. 7454(a), I.R.C. 1954; Rule 142(b), Tax Court Rules of Practice and Procedure; Ruark v. Commissioner,449 F.2d 311 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. Respondent is not required to prove the precise amount of the underpayment resulting from fraud but only that "any part" of the underpayment is attributable thereto. Otsuki v. Commissioner,53 T.C. 96, 105 (1969); Estateof Brame v. Commissioner,25 T.C. 824 (1956), affd. per curiam 256 F.2d 343 (5th Cir. 1958). We are convinced that respondent has more than adequately carried his burden of proof. The record clearly establishes that petitioners used their positions and influence to extort various amounts of money from individuals operating as meat loaders in the Vernon, California area. Those who paid for "protection" feared that if the payments were not made they would lose their accounts with the local meat packers. The payments were funneled through *455 Mr. Matthews in such a manner that petitioners were insulated from a direct involvement with the mechanics of their extortion scheme. Mr. Grancich, in furtherance of this scheme, attempted to exert his influence by threatening Mr. Dougherty with reprisal if he testified against him or any official of Local 626. Mr. Grancich instructed Mr. Dougherty to "put the blame" on Mr. Matthews, who actually collected the extortion payments on behalf of petitioners. The method of collection, the substantial amounts received and not reported, and the intimidation applied by petitioners are, taken as a whole, clear and convincing proof of fraudulent intent. The failure to advise the income tax return preparers of their extortion income demonstrates a fraudulent intent to omit the income from their tax returns. The testimony, although conflicting, was clear and convincing to prove fraud. The fraud penalty determined against Mr. Grancich and Mr. Galea is, therefore, sustained. During the course of the trial, the parties objected to the receipt of evidence on various grounds but did not preserve their objections on brief. We, therefore, deem the objections abandoned. Decisions will *456 be entered under Rule 155.
Footnotes
1. Cases of the following petitioners have been consolidated herewith: Archie A. Galea and Marie Galea, deceased, by Archie A. Galea, surviving husband, docket No. 5461-73; Archie A. Galea, docket No. 4169-75; Archie A. Galea and Marie Galea, Archie A. Galea, surviving husband and administrator of Estate of Marie Galea, deceased, docket No. 4170-75; and Mike M. Grancich and Helen Grancich, docket No. 4172-75.↩
2. Sometime during 1970 Mr. Matthews instructed Mrs. Taylor to give an envelope containing $600 to Mr. Galea. Mrs. Taylor was unable to locate Mr. Galea and gave the envelope to someone else at Pronto.↩
3. Mr. Galea agreed to accept less than the full $1,500 from Mr. Goldstein.↩
4. Mr. Campanale was associated with Pronto during the years relevant to the taxable years in issue.↩
5. United States v. Campanale,518 F.2d 352 (9th Cir. 1975), cert. denied 423 U.S. 1050↩ (1976).
*. Except for 1 " more charged to Grancich.↩
6. Rosenberg v. Commissioner,T.C. Memo 1974-10↩.
7. See Starr v. Commissioner,T.C. Memo 1976-289↩.